## THE LIFE ASSOCIATION OF AMERICA & JOHN F. WILLIAMS, SUPT. v. F. M. GOODE.

### SUPREME COURT, AUSTIN TERM, 1882.

*Corporation—Dissolution of—Same created by another State.*—In suit against dissolved non-resident corporation, the petition should show facts under the laws of the other State, the judicial decree, the receiver, and his authority, joining him in the suit.

Appeal from Grayson County.

Plaintiff, F. M. Goode, is a resident of Grayson county, Texas; defendant, the Life Association of America, was a corporation, organized under the laws of the State of Missouri, for the purpose of carrying on a Life Insurance business, and having its domicil in the city of St. Louis in said State. Plaintiff's amended original petition, filed February 25th, 1881, alleges in substance that his original petition was filed on the 1st day of March, 1879. That at various times between September 30th, 1972, and April 19, 1975, he had paid the association sums of money aggregating the sum of $1630. That in consideration of such paymenrs, the association on the 30th day of September, 1872, issued and delivered to plaintiff its policy of insurance, insuring his life in the sum of $10,000. That prior to, and at the time of entering into said contract of insurance, and at the time of the several payments made thereon by plaintiff, the agents of the association falsely represented to plaintiff that the association was solvent and responsible, was making money, and had a large capital and surplus; when in fact, as said agent well knew, the association was insolvent, was doing a losing business and had no such capital as represented. That plaintiff was induced by said representations to take said insurance and pay said money. That

on December 31st, 1877, the association represented to plaintiff that it was about to discontinue its business and wind up its affairs in 1888, and demanded of plaintiff that he surrender his policy and except in lieu thereof a paid-up policy for the sum of $1250. That plaintiff then surrendered his old policy and received instead a paid-up policy on his own life for $1250 on the fortition plan, payable to his wife for the benefit of herself and the children of plaintiff, according to its terms. That the consideration for which the fortition policy was issued, was the money paid by plaintiff on the $10,000 policy. That at the time the fortition policy was issued, it was well understood by the agents of the association that the association was insolvent, and unable to comply with its contract. That the association afterwards discontinued business, and on the 10th of November, 1879, was adjudged insolvent, and its officers enjoined from further carrying on its business, and prays for judgment for said money and for a foreclosure of an attachment lien on certain attached real estate situated in Grayson county, which formerly belonged to the association, and upon which an attachment issued in the case was levied on the said 25th day of February, 1881. (Trans. 89, 90.) An agreement was filed to the effect that by the appearance of the corporation its existence should not be held to be admitted, and that it might make any defense it could have made if regularly served with citation. (Trans. p. 79.) Finley and Pasco appeared for Association, and after general and special demurrer, plead the dissolution of the corporation in statement (Trans., p. 13, line 7 to p. 14, line 16) filed a general denial and a special plea alleging that on the 10th day of November, 1879, the corporation, The Life Association of America, was dissolved by a decree of the circuit court of the city of St. Louis, in the State of Missouri, and all of the property, real, personal and mixed, whether situated in the State of Missouri, or elsewhere, including the property attached in this suit, was conveyed to, and vested in Wm. S. Relfe, as Superintendent of Insurance of the State of Missouri, and his successors in office, to hold and dispose of the same for the use and benefit of the creditors and policy holders of the association, as provided by the laws of Missouri. That said land has been conveyed by deed to Wm. S. Relfe, Superintendent of the insurance department of the State of Missouri, in compliance with said decree, and said Relfe had so taken possession of the property of the association, including

said land, long before the suing out of the attachment in this suit, and plaintiff had notice of the same. That plaintiff had never presented his claim for allowance.

Plaintiff excepted to this plea in abatement and the special answer (Trans., pp. 31 & 32) and the exceptions were sustained (Trans., p. 33). On April 20th, 1881, John F. Williams made himself a party and filed an answer, (Trans., p. 33) alleging that he was the successor of Wm. S. Relfe, in the office of Superintendent of Insurance of the State of Missouri, and was vested with all the rights and powers, and charged with all the duties of said Relfe in the premises. Demurred generally and specially, plead the dissolution of the corporation and transfer of the property in abatement, plead a general denial, and by a special answer, set up the dissolution of the corporation, the transfer of its property under the decree, and specially alleged that the land attached in this suit was regularly conveyed by deed to the Superintendent of Insurance of Missouri, by the officers of the Association, on the 10th day of November, 1879, and that said deed was duly recorded in the proper of Grayson county, Texas, on the 13th day of November, 1879, and that said superintendent had possession of said land under said deed at the time said attachment was levied. The court sustained the demurrer to plaintiff's amended petition when plaintiff filed a trial amendment, and trial was had, resulting in a verdict for plaintiff for $2425.97. Plaintiff remitted all in excess of .2,000, for which judgment was rendered, with a foreclosure of the attachment lien. Motion for new trial overruled, and defendants prosecute this appeal.

FIRST ASSIGNMENT OF ERROR.

The court erred in sustaining the demurrer to defendants answer. The defendants' corporation having been dissolved, no judgment could be rendered against it.

FIRST PROPOSITION FIRST ASSIGNMENT OF ERROR.

The dissolution of the corporation abated the suit.

Opinion by Walker, J.

The effect of the dissolution of a private corporation by decree of a court of competent authority, having jurisdiction over the same, is to extinguish and annul thenceforth its corporate powersr and the sovereign power which had brought it into existence by giving it an artificial personality, thereby, through its judicial mandate, termin-

ates that existence by the withdrawal of all its franchises. Sec. 2, Waits' Act. and Def., 350; Aug. & Ames on Corp., Sec. 638–799. In the case of National Bank v. Colby, 21 Wallace, (U. S.) p. 615, where the district court of the United States, had by its decree forfeited all the rights, franchises, and privileges of the Bank, and adjudge its dissolution, in proceedings for that purpose, under an act of Congress, the question under consideration being, whether a suit against the Bank to enforce the collection of the demand is abated by such decree. Mr. Justice Field, said : "With the forfeiture of its rights, privileges, and franchises the corporation was necessarily dissolved, as the decree adjudged. Its existence as a legal entity was thereupon ended; it was then a defunct institution, and judgment could no more be rendered against it in a suit previously commenced than judgment could be rendered against a dead man dying *pendente lite*. This is the rule with respect to all corporations whose chartered existence has come to an end, either by lapse of time or decree of forfeiture, unless by statute, pending suits be allowed to proceed to judgment notwithstanding such dissolution. The prolongation of the corporate life for this specific purpose as much requires special legislative enactment as does the original creation of the corporation." The opinion proceeds to quote as follows : "'I cannot distinguish,' says Story, in Greeley v. Smith, (3 Story, 658; see also Farmers' and Mechanic Bank v. Settle, 8 Watts & Sargent, 207; and Mumma v. The Potomac Company, 8 Peters, 281) between the case of a corporation and the case of a private person dying *pendente lite*. In the latter case the suit is abated at law, unless it is capable of being revived by the enactment of some statute, as is the case as to suits pending in the courts of the United States, when, if the right of action survives, the personal representatives of the deceased party may appear and prosecute or defend the suit. No such provision exists as to corporations, nor indeed, could exist without reviving the corporation *pro hac nice*, and, therefore, any suit pending against it at its death, abates by mere operation of law'."

It is by virtue of our statutes, which provide against the abatement of suits between private persons that pending suits are not discontinued by the death of plaintiff or defendant, as would be the conveyance, otherwise, at common law; and in order to maintain the suit after such death, by the legal representative, it is necessary

that the legal basis therefor shall have been made apparent from the record. See Siese v. Malsch, 54 Texas, 358-9. There is no legislative provision in our State, which authorizes a pending suit to be prosecuted for or against a private corporation created by the laws of another State, after such corporation shall be dissolved and its corporate existence shall have ceased.

It is proper to keep in mind the discrimination necessary to be made between corporations which exist within and by virtue of the laws of this State, and those which are the creation of the laws of other States of the Union ; as to the latter, they can not claim rights to recognition here, further than those that may be extended *ex comitate ;* for, as was said in respect to the helplessness and dependence of a corporation away from "its native heath," by the Supreme Court of the United States in Bank of Augusta v. Earl, 13 Peters, 586. "It must dwell in the place of its creation, and cannot migrate to another sovereignty." In the case of Paul v. Virginia, 8 Wallace, (U. S.) 181, the following language is held : "The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. The recognition of its existence even by other States, and the enforcement of its contracts made therein, depend purely upon the comity of those States—a comity which is never extended where the existence of the corportion or the exercise of its powers are prejudicial to their interest or repugnant to their policy. * * The whole matter rests on their discretion."

Our statutes regulating the dissolution of corporations, refer alone to such corporations as are or shall be "created by or under the laws of this State." Revised Stat., Arts 606-608.

Under the legislation in our State, as it exists, it seems to follow from the application of the rules of law governing the subject of the right of a resident citizen of Texas to sue in this State, a corporation which owed its existence to the laws of another State, and has been legally dissolved with a forfeiture of its rights and franchises, that after such dissolution a suit could not be brought against such extinct corporation; or if pending, could no longer be maintained in the courts of this State.

It was admitted by the parties on the trial, that the decree of the St. Louis Circuit Court was authorized by the laws of the State of Missouri.

John F. Williams, Receiver of the defendant, (Life Association of America) appeared, and making himself a party defendant, set up the plea in abatement, which denies the plaintiff's right to sue. The case of Relfe v. Rundle, 13 Otto, (U. S.) 222, was a suit in which Relfe, the predecessor in office of Williams, in the above cited case made himself a party defendant, under circumstances analogous, and in behalf of the same interests and parties which Williams represents in this suit. It was decided in that case that the dissolution of the corporation under the laws of Missouri had the effect, according to their provisions and the decree which adjudicated concerning them, to invest the Superintendent with the title to and the rights of the corporation; and that he had the right to represent the former corporation in litigation where its rights are concerned, the same as the corporation might have done if it had continued to exist. It may be conceded consequently, that Williams has the right to appear here, and to represent any rights or interests, which under our laws he may, in virtue of his relation to the corporation under the laws of Missouri, be enabled to maintain.

The plaintiff, clearly, could no further proceed in his suit after the circuit court decree, unless by making the Receiver a party, and when the plea in abatement was interposed, it became necessary that the plaintiff should proceed to lay the basis for a continuation of his suit by a recognition of the altered status of his rights since he begun his suit, by making the Receiver a defendant. He not having done so, Williams' plea in abatement of the suit ought to have been sustained; the suit could not be prosecuted against the corporation, nor proceed further, unless by bringing parties before the court who were necessary in order to justify the court in rendering a judgment to affect the rights of persons concerned in the due administration of the assets of the company. Under the suggestion of dissolution of the corporation, the plaintiff *prima facie*, had no longer a cause of action in this forum; the court could take no judicial cognizance of the laws of Missouri, nor as to what rights the plaintiff might be able to assert, by amending his petition, against the Receiver, as the successor to the rights of property recently vested in the corporation. Consequently, the suit, in the form in which the plaintiff prosecuted it, must have abated for want of any case being made appropriate for its maintenance against the

Receiver, Williams, who alone could be sued after the dissolution, if there remained any ground longer for action.

According to this view of the subject, it becomes unprofitable to follow further the various grounds of error relied on for a reversal, because the trial below has been had upon issues which cannot afford the basis of a judgment for the plaintiff; he cannot recover against "the Life Association of America" at all either in this proceeding or any other; and if he may be enabled to retain this case in court and prosecute it further, it must be under an amended petition alleging such facts as will show upon the face of the pleading that under the laws of Missouri, and the decree of the circuit court, the Receiver is invested with such authority as the representative of the defunct corporation as that he may properly be sued upon facts such as the plaintiff relies on for damages for deceit or fraud, or for the rescission of the contract as the case may be.

It is not necessary if we could, and we could not if we would, safely attempt to anticipate, or to give directions to the future course of the plaintiff to enable him to assert his rights; it is enough to say, now, that there exists fundamental error in the proceedings which have been had, and that it will not materially interest the parties or advance the cause on another trial, for us to consider further the eighteen assignments of error which are presented for examination.

We conclude that the judgment ought to be reversed and the cause remanded.